The next case of the day with our revised sequence that will be Squires-Cannon v. Forest Preserve District of Cook County. And Mr. Cannon. Good morning, your honors. May it please the court. My name is Richard Cannon. I represent all of the plaintiffs, including myself, pro se. I would like to discuss two primary focuses of this case, the constitutional takings claim and the fraud claim. The first focus is plaintiff's claim that a unit of local government coercively took title to private property without just compensation to the owners, in violation of the Takings Clause of the Fifth Amendment, rather than comply with the laws of eminent domain which require establishing a prevailing public purpose and a jury determination of fair market value for just compensation to the owners. Defendant Forest Preserve District, whom I will refer to as FPD from now on, purchased an existing private note and mortgage from Defendant Harris Bank using taxpayer funds and then foreclosed, bidding $6 million under the admitted property value, leaving the property owners with no compensation whatsoever for the equity in their property. You mentioned a unit of local government. Yes, your honor. What is it? The Forest Preserve is a unit of local government. And who passed the ordinance of whatever it is? The Cook County Board of Supervisors. The Board of Supervisors is an elected group? Yes, your honor. Okay, so this is a, when they issued that ordinance that described the property, I guess, and said that they wanted it as a forest preserve? Yes, your honor. Okay, and is that the taking you're referring to? Well, that's the taking by regulatory takings, but there were direct takings as well. Was that where they occupied the place with signs? I'm sorry? Put signs in and trails? Yes, your honor. That's part of it. No, that was private property. That was private property. And you were a part owner. Yes, your honor. Didn't owners see people went in and out and wondered why you're all trespassing? Yes, your honor. They were actually confronted and asked to leave, and they refused to do so. They said, oh no, the Forest Preserve owns this property. And the Forest Preserve actually had their own private police department, says FPD police on the side of the car, touring through the property. And we asked them, could you please ask these people to leave? And frankly, why are you on our private property? They refused to do so. What was the private property? Did it have plants on it, houses, or did it have trees? What was in the 400 acres? It's a 400-acre, for lack of a better term, agricultural farm. Agricultural what? Farm. Farm? Farm, F-A-R-M. Isn't that redundant? Well, there are horse farms, for instance. Oh. In fact, probably a better and more accurate description would be that it was a horse farm. It had 11 barns on it. Okay. Now that's my question. Okay. So it was obviously somebody owns it and operating it. I don't know whether there are people riding horses or they actually have horses in those barns. Yes, your honor. Initially, we owned our own privately owned horses and had them in the barns. What kind of horses were they? Mostly show horses. Now they're mostly race horses because there's no money in show horses. No money in any horses. No, that's true. Okay. Go ahead. Mr. Cannon, who had control of the property after the receiver was appointed in the foreclosure proceeding? We did, your honor. The reason is that the receiver who was appointed met with us to go over the details of how the farm had been operated in the past, et cetera, and the receiver concluded that we were best qualified to manage the property. There was really no financial remunerations being obtained from the running of the farm. It was basically a bottomless pit. It cost more to manage it and run it than could ever be derived from cutting the hay and selling it, if, in fact, that occurred. Who was feeding the horses? We were feeding the horses, and then our tenant royalty farms, which is partially owned by my wife, Meryl Squires Cannon, the plaintiff in this case, also had horses on the property, and she was making sure that they were fed through that entity as well. Did the receiver reach some sort of written agreement with you about this? Yes, your honor. Is it a part of the record? I'm not sure that it is. I know that it's part of the record in the foreclosure case, and, in fact, the foreclosure court approved that, what he called a management agreement, written management agreement. And with respect to the physical entry that you've alleged in paragraph 30 of your complaint, when exactly did that happen? Your honor, it happened prior to the foreclosure auction, but after the summary judgment order granting foreclosure. So it was in that window of time, and then certainly after the foreclosure auction occurred, but long prior to the foreclosure sale being approved, and hence title did not transfer until that time. During that entire period of time, the Forest Preserve felt it was free to come on the property, et cetera. Now, I want to clarify that. There were state litigation in this too, wasn't there? I'm sorry, I didn't hear that. My recollection is there was state litigation involving this property. There was a taxpayer lawsuit filed to argue that the enablement act that created the Forest Preserve. Who initiated that lawsuit? There were four taxpayers, including myself, my wife, and two other individuals, Todd Baker and one other. What's the status of that litigation? That litigation has been concluded, and that court ruled that the enablement statute, which allows a party to purchase land, excuse me, allows the Forest Preserve to purchase land, had complied with that statute by purchasing a private note and then coercively taking the property through foreclosure. I don't think that's quite the way the court put it, was it? But anyway, could you tell us the status of the foreclosure case now, after the appellate reversal? It's basically starting from scratch. We're taking discovery. The court has not even set a discovery schedule. We have counterclaims in that case that will be litigated. Who's in possession of the property now? Currently, the owners, which is Royalty Properties, the four plaintiffs in this case. Okay, you and your wife and the two companies you control. Correct. Okay. Okay, thank you. Okay, Your Honor, I would like to point out probably one of the most significant issues here, which is the fact that the district court erred in holding that the FPD acted solely in a proprietary capacity throughout the foreclosure process. Beyond just coming in and setting up the signs and inviting the public to come on the property, before you even get to that issue, Your Honor, the case law, the only case law that found that it was appropriate for the government to be involved in a foreclosure was under circumstances where the property owners voluntarily entered into a contract of some sort with the government. For instance, they borrowed money from a government entity. Well, that sounds like you want to re-argue the Baker case. No, Your Honor, not at all. Because the state court said that the Forest Preserve could do this. The state court did, but it doesn't mean that it complies with the eminent domain requirements of the Constitution. What the courts have held in A&D Auto Sales v. U.S., 748 Fed 1142 at 1156, Fed Circuit 2014, is that typically a contract with the government is in place in order for there to be proprietary action. Otherwise, the government is taking the property coercively without the permission, without the agreement, the underlying agreement of the owners. This wasn't a condemnation. No, it was not. As a matter of fact, the Baker court ruled that that case was not a condemnation case. And so you don't get to the point where they're taking a condemnation where all you get is the fair market value, just compensation. Well, that's what the main issue is here. The Forest Preserve doesn't want to have to go through the process required by eminent domain of having a jury determination of fair market value and compensating the owners. Instead, they wanted to do an end-to-round, purchase the note from the bank, and then foreclose and only bid what they had to in order to win at the foreclosure sale. What forum or whatever it was that came up with the idea of being able to bid up to $20 million? That was the Board of Supervisors. Now, who knew that? Who knew that? Yeah. At the time, anyone who was looking at purchasing a multimillion-dollar farm would have done due diligence and seen it. It was part of the public record. Because then somebody could almost come in with a straw buyer and bid up almost to where they were authorized to pay. That would be a credit bid, however, up to $20 million. Well, the Forest Preserve credit bid based on the fact that they got the judgment on the note. Well. Okay. But now there's a deficiency, right? There is. About what? Over $6 million. $6 million. So not only did they take our property, but they also won $6 million on top of it. But that's been vacated and is now back at square one, right? It is. As part of the remand of the foreclosure suit. It is. So let me ask you this, Mr. Cannon. Since you're starting all over in state court with the foreclosure suit, your counterclaims, what is the point of separate federal litigation going on as opposed to simply staying this under Colorado River abstention? While the state courts work through those issues and wait and see if there's anything left for the federal courts to do. Well, two things, Your Honor. One is that the damages that are sought in the federal action have nothing to do with whether or not title is held. A takings claim is strictly to recover the amount of compensation, just compensation that should have been awarded. For what? For the takings of the property, the taking of the property. You've still got it. Title is apparently still with you and your companies because of the vacating of the foreclosure judgment. Yes. So maybe there's something to argue about with this October 2013 entry with the signs and so on. That's part of it. That's some of the damages. What else is there? There's also the damages of having to litigate the issue of having to. . . No, litigation of foreclosure proceedings is not a damage. It's hard to see how that's going to be dealt with. No, no, I wasn't saying that. The damages are having to go to federal court and sue. . . You can't sue in federal court about the fact that you have to sue in federal court. That's what that sounds like. So I'm trying to understand. . . It sounds like there's a tip of a federal tail here in a state court body that is the principal forum for this dispute. Tell me what's wrong about that. Well, what I'd like to ask the court to consider is the fact that if this court upholds the behavior of the Forest Preserve in purchasing a private note and then coercively obtaining title, that what's going to happen is every government body in the country will then look at purchasing a private note as a way to do an end run around the requirements of eminent domain. There's no protections provided whatsoever for a jury determination of just compensation. The auction that you go through on a foreclosure case is just that. It's an auction. And in this particular case, the Forest Preserve interfered with a normal, unbiased estimation of the value by the public. Because they stated, we're going to condemn this property and take it that way if we don't win the foreclosure settlement. The private note was in default. Is that correct? The private note was technically in default, but there are defenses to whether or not it's even enforceable. But that's the problem. There's a lot of money owed, a lot of money borrowed, and a lot of money owed, and it's a lien on the property. Right. But the difference is we shouldn't have to defend against the government coming in and interfering with the foreclosure process. Someone got into your shoes. You were the obligor. Someone got into your shoes and took over. And then you're trying to say you're basically rendered helpless because now they own the note. They didn't step into my shoes, Your Honor. They stepped into the bank's shoes, and that's where the problem comes. Because we never agreed to – Straighten me out on that. I'm sorry. Straighten me out on that. Okay. You didn't – We never agreed to subject ourselves to government coercive taking through foreclosure. What we agreed to was private parties, the bank, or any private entity that the bank might assign the note to, would have one motivation. They would want to get their money back with interest, hopefully, and profits, et cetera. Okay? Totally different situation with the government coming in and saying, we don't want the money. We want to take your property. The only way that you're going to get out from under this is to pay for the note, interest, penalties, et cetera. Our expectation when we entered into the contract with the private party was that the bank would sit down and negotiate with us. And, frankly, they did so with respect to a second lien note, and they took 90 cents on the dollar. Well, I'll have to get more about the starting over thing, but there was $14.5 million paid to somebody, wasn't it? That's correct. And if the Forest Preserve got a pig in a poke for it, they should be going to Harris Bank and say, look, what you sold to us is an unenforceable note. We as a government entity cannot purchase a note and foreclose because that's government taking without just compensation to the owners. They pay the bank. If I understand your position correctly, Mr. Cannon, the government is entitled to be a mortgagee. It can lend and so on. Then it can foreclose. But you're trying to say that a note and a mortgage that say they're freely assignable cannot be assigned to a government. Is that right? In effect, that is correct because the expectations of the borrower. Mr. Cannon, your time has expired. We'll now hear from the Forest Preserve. I'll give you a moment for rebuttal afterwards. Thank you. Mr. Carmichael. Mr. Carmichael. Good morning, Your Honors. Christopher Carmichael on behalf of the United States. Although the United States has ceded its time to me, they are available to answer any questions the court might have of the United States. Plaintiff's appeal in this case attacks both the conduct of state court foreclosure proceedings and the conclusions of the Illinois appellate court in the Baker case. As this court knows, there's no taking if a governmental entity enforces a contract, just like a private party would. Plaintiffs try to distinguish that, suggesting that if a governmental entity acquires a private contract, that somehow now there's a taking. As Your Honors noted, the contract is freely assignable. There's no restrictions in that contract on who it can be assigned to. And there are at least two cases we cited where the government stepped into the shoes of a lender, the DSI case and the Southern Comfort Campgrounds case, and then enforced a loan. That happens often in government-insured mortgages and sometimes when the government takes over failed financial institutions. Both of those instances, the government enforces the note, and it's not a taking because the government is enforcing the contract. But the government usually is more interested in money than in the land itself. There's a big difference here with the Forest Preserve trying to expand its holdings, right? Yes, that would be true, Your Honor. In terms of the government's motives, could I ask you about what you think about the status of the foreclosure suit at this point? Well, the proceedings are ongoing, Your Honor. It's headed possibly for a trial. Okay. Do you agree that the plaintiffs in this case are now in possession and control of the property? That's correct, Your Honor. Have Forest Preserve signs been removed? They have removed them. Not being treated, the property is no longer being treated as part of the Forest Preserve District? That's correct. Okay. I need to ask you about the allegation of the physical takings, particularly those alleged in October 2013 in Paragraph 30 of the complaint. How can that question? That's really not covered by this theory of taking by foreclosure or the regulatory taking. It just sounds like a government trespass, unless you had a good basis for doing so. Plaintiffs are telling us that the receiver who was in place had delegated control to them. How can this be decided on the pleadings? Well, Your Honor, I would say there's a couple different things there. First of all, it is very similar to the foreclosure proceedings because it's part and parcel to those proceedings. Obviously, it occurs, the alleged invasion occurs, because the Forest Preserve District is participating in the foreclosure proceedings. Right, but they're saying you jumped the gun. What's that? They're saying you jumped the gun. Yes. So the receiver, we have in the record the receiver's orders, so the receiver is in technical control. The receiver did lease the property, so the receiver is both appointed by the court to manage the property, and then he leases the property, and he leases the property to the defendants. Okay. So? So if there was, and I think the complaint is not exactly clear about when that occurred. Sounds like October before the foreclosure sale. We know that. Sure. And before the foreclosure sale, there is an order entered making the Forest Preserve, substituting the Forest Preserve for the receiver. Where do we find that? That is in the record, Your Honor. I'd have to look at my brief to give you the exact citation to that. It's docket 63-1, pages 95-99. What page is that in your brief? Page 6, Your Honor. Okay. How does that fit in with what Mr. Cannon was telling us about his deal with the receiver? By terms of the lease and the court's order, the receiver is replaced, and the lease is terminated, and the Forest Preserve takes possession. Okay. When did the signs go up? That is unclear from the complaint I would submit to Your Honors. Your client presumably put them up. They did not put any signs up until after the mortgage and possession order was effective. The October 10 order. Yes, the October 10 order. They did not put any signs up. No patrolling going on, no public traffic or whatever? Not until after the order was effective, Your Honor. They know quite well what their powers are once the order is effective, and they did not do anything until after that order was effective. Where's the money right now, $14.5 million? Well, it was spent on the property. Right. It would be the $14.5 million that was paid for the note would be. So the bank's got that? Yes. So if you take a look at the complaint, on that issue, it seems to focus more on obtaining title and tying title to possession. In a mortgage foreclosure, there's pre-title possession allowed, which obviously was allowed at first with the receiver and then switched to the mortgagee and possession, which are the same exact thing, just different titles. The possession is then wrested from the mortgagee and then put in the mortgagee's hands. Since things sort of start over or whatever, or continuation, is there any opportunity, because there is a $6 million deficiency, is that final? No, Your Honor. It would be indeterminate now because of the reversal, and it would actually be even larger, because that was $6 million in, I think, 20. It isn't getting smaller, I'm sure of that. It's probably $7 million, $8 million, $10 million now. It just grows constantly. That's pretty steep. Yes, but that is what happens when you borrow $14 million and do not pay it back. Well, it includes that. That's why I was sort of curious about that bidding process. Yes. The plaintiffs are telling us that they were making payments. The problem was that the bank shafted them by not following through on, in essence, the takeout, the long-term loan. That is their allegation, Your Honor. Okay, so we know the state courts have got a lot ahead of them here. Yes. And so one of the allegations, and I think Your Honor has touched on it, was that the Forest Preserve's interest in the foreclosure sale depressed the bidding, and obviously there are some U.S. Supreme Court cases that say an effect on sale price does not constitute a taking. In addition, I think if the Forest Preserve's published limit was the $20 million, which was the amount of the note plus interest at the time, so they could full bid up to that, and if the property was really worth $29 million, somebody easily could have made some money there, right? Because they know the Forest Preserve's limit, and they could have bid that $1 above. But they should have known that then, right? Yes. And I don't want to use the word straw buyer, but somebody could have come in and said they're this, that, and the other thing and bid it up to $17 million and then walked away. Yes. And you, meaning the Forest Preserve would have to have paid that. Yes. And it easily could have been the plants, by the way, here. So, I mean, they could have, if it's worth so much more, they could have done that. They could have paid the mortgage. They could have redeemed. There are a variety of things they could have done to avoid these issues. The other claims which we did not discuss so far were the fraud claims, and they are quite unusual in this case because they're not premised on the transaction that was actually proposed to the plaintiffs, which was a settlement. They are premised on a transaction the plaintiffs were not a party to that they wanted to then interfere with. So the plaintiffs were approached about a possible settlement, but they wanted to know about the transaction between the Forest Preserve and the bank and then interfere with that transaction. And so they've claimed a fraud to not learn about a transaction they were not a party to. And we believe under the law, there was no duty to disclose to the plaintiffs details of transaction they were not a party to so they could interfere with it. Concealment, as the court knows, typically requires some sort of confidential relationship or fiduciary duty, and obviously with adversaries in litigation, there was no such relationship that could exist here. Plus again, we would note that the actual note could be assigned to anyone without notice. So plaintiffs had no notice, no right to any notice that the loan might be sold or to dictate who it might be sold to. Is there any way they could have found that out by some inquiry or something like that? I don't know how public this Forest Preserve is. They did try. They asked the State Foreclosure Court, and that's in the record again. They asked the State Foreclosure Court because the Forest Preserve took a tour of the property before completing the purchase, and the State Foreclosure Court approved that. They asked the court to disclose who the buyer was. Was this the tour where they, whatever, didn't disclose who they were? That's correct. Pretenders that may be interested in buying or doing something? Yes. And Mr. Cannon, in fact, on the record in that transcript that's attached to the complaint, asked the Foreclosure Court to disclose the buyer's names, and the court refused. So they were trying to find the information out, but no one wanted to tell them. And that, we submit, is not an actionable fraud. And finally, we would submit that no damage has flowed from the fraud because you cannot borrow $14 million and simply not pay it back. They can't both have the property and not pay the loan. So they've suffered no damages from having the no buyer change. So at the moment, at least, the property is as was. Maybe, I saw somewhere where somebody was living in the house. There are some tenants on the property. Is that what it is? Yes. There are also allegations of damage to some of the fences. That was something that appellants tried to introduce into the record after the foreclosure proceeding. And the District Court did not allow them. Unless the court has any further questions, we'd ask the, the appellants would ask that the court affirm the District Court. Thank you, Mr. Carmichael. Mr. Cannon, your time has expired. Please go ahead and take two minutes if you'd like for rebuttal. A couple of things very quickly, Your Honor. Counsel is showing a lack of candor with the court when he says that the signs went up after the October 10 MIP, Mortgage and Possession Order. The fact is that order was not to be effective until November 18. So until that time, we were still in possession. We had the right to be exclusively in possession. But more importantly, the signs and the police officers coming on the property, Forest Preserve police officers coming on the property, were prior to the grant of that order. So what did that do? Dissuade potential buyers? Absolutely. Absolutely. More importantly, anybody that's looking at buying a $20 million piece of property is going to do due diligence. And they're going to see that the Forest Preserve is now the owner of the note. They're going to look into what is there on the statutes, et cetera. And they're going to see that the Forest Preserve has entered an order saying, or excuse me, an ordinance saying, we intend to and shall, it is necessary, to purchase this property. And we shall fill that up, that duty or that desire, either by purchase or by condemnation. So anybody that's looking at potentially bidding looks at that and says, why would I bid? Even if I win the bid, the Forest Preserve is going to come in and take it by condemnation. That would be true any time. If you were simply trying, if you were current on the note and simply were interested in selling the property, and if the Forest Preserve had taken that action, would that still be an unlawful taking in your mind? It would in the circumstance where they were scheduled to have a foreclosure sale two weeks later and they were in control of the foreclosure. I'm saying forget the foreclosure, but simply where you're wanting to sell the property in an open market and the government has announced, we intend either to buy or to condemn the property. Is that a taking at that point? If it's a finite time period to do that, the answer is yes, it would be a taking. If it's merely a prospective, someday in the future, we're looking at acquiring this property, which is what the cases will uphold, then no, it would not be a taking at that point. Okay. Thank you very much. Fraud issue, Your Honor. I never got into it. We listen to a lot, so thank you, Mr. Cannon. The case will be taken under advisement.